# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ZULMA J. RODRIGUEZ,<br><br>        Plaintiff,<br><br>v.<br><br>ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civ. No. 19-21473 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

    Claimant Zulma Rodriguez appeals the final administrative decision of the Commissioner of Social Security denying her claim for disability insurance benefits. For the reasons provided herein, I will reverse the Commissioner's decision and remand for further proceedings.

    The experienced and able ALJ held a hearing that was a model of its kind: fair, compassionate, and thorough, conducted with an eye toward developing the record and eliciting potential issues. There was a certain disconnect, however, with the analysis in the decision. Counsel for the claimant submitted a persuasive brief that focused on the two or three key issues.[1] The Administration responded with a brief that took seriously the claims of error, conceding deficiencies where necessary, but arguing that they were ultimately harmless. Because this is a close case, I cannot confidently say

---

[1] And did so without resort to invective, not always the case with this counsel. *See Ortega v. Comm'r of Soc. Sec.*, 232 F. App'x 194, 198 n. 1 (3d Cir. 2007) (admonition to counsel); *Torres v. Saul*, No. 2:18-CV-1716, 2020 WL 4581825, at *4 (D.N.J. Aug. 10, 2020) (reviewing history of similar admonitions). Professionalism aside, this case may provide an object lesson in the relative effectiveness of such briefs in comparison to this one. This footnote is offered not in a spirit of reproof, but encouragement.

1

that any error was harmless, and I will remand for further proceedings. That being the case, my opinion will be short.

## I. Summary[2]

On June 23, 2016, Rodriguez filed an application for DIB and SSI benefits for a period beginning May 7, 2015. (R. 260–73, 293). Her claim was denied. Rodriguez then filed a request for a hearing, which was held on October 24, 2018. (R. 80–110). At the hearing, both Rodriguez and a vocational expert ("VE") testified. (*Id.*) Rodriguez was represented by different counsel at the hearing.

Following that hearing, on January 8, 2019, Administrative Law Judge ("ALJ") Donna A. Krappa concluded that Rodriguez had not been under a disability within the meaning of the Social Security Act ("SSA") from May 7, 2015, through the date of the decision. (R. 8–27). The Appeals Council denied review (R. 1–7), rendering the Secretary's decision final. Rodriguez now appeals to this Court.

## II. Discussion

### a. Legal standard

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments,

---

[2] Citations to the record will be abbreviated as follows.

"DE" = Docket entry number in this case.

"R." = Citations to the Administrative Record (DE 7)

"Pl Br." = Plaintiff's brief (DE 12)

"Def. Br." = SSA brief (DE 13)

is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### b. ALJ Decision under review

Here, Judge Krappa made the following findings of fact and conclusions of law. In doing so, she properly cited and followed the five-step protocol.

First, the ALJ found that Rodriguez met the insured status requirements of the SSA through December 31, 2020, and had not engaged in substantial gainful activity since May 7, 2015, the alleged onset date. (R. 14)

Next, the ALJ found that Rodriguez has the following severe medically determinable impairments that significantly limited her ability to perform basic work activities: fibromyalgia, right sciatica, hypertension, arthritis, anemia sleep apnea, headaches, anxiety, depression, and posttraumatic stress disorder (PTSD). (R. 14)

The ALJ then found that Rodriguez does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *See* 20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The mental impairments, the ALJ found, do not singly or in combination equal the criteria of listings 12.04, 12.06, and 12.15. She properly considered the limitations of paragraph B, finding mild limitations in understanding, remembering, or applying information; in interacting with others; and adapting or managing oneself. The ALJ found a moderate limitation as to concentrating, persisting, or maintaining pace. The ALJ also found that the paragraph C criteria were not met. (R. 14–15)

The ALJ did not discuss the physical impairments at this stage, but did so in connection with the determination of RFC.

The ALJ determined that Rodriguez has the RFC to perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b). Specifically, the ALJ found as follows:

> [S]pecifically, she is able to: lift/carry 20 lbs. occasionally and 10 lbs. frequently; stand/walk for 6 hours in an eight hour work day; sit for 6 hours in an eight hour work day; and perform unlimited pushing and pulling within the weight restriction given. Moreover, regarding the postural and environmental demands of work, I find that the claimant is able to perform jobs: that require occasional use of ladders, ropes, or scaffolds; that require only occasional use of ramps or stairs; and that require occasional balancing, stopping, kneeling, crouching, and/or crawling. Regarding the mental

4

demands of work, I find that the claimant is only able to perform jobs that are simple, and repetitive.

(R. 15–16)

The RFC was followed by a discussion of the medical evidence. In it, the ALJ found adequate documentation of certain medical conditions, but concluded that their effect was not as severe as was claimed. I summarize that evidence only very briefly.

The ALJ noted an April 2016 study documenting sleep apnea, but also noted it was controlled with use of a CPAP. The same study noted a BMI of 52.6, and made a recommendation of CPAP with diet, exercise, and bariatric surgery.

The claimant had gastric bypass surgery in November 2016. She reported that a year later, she had been able to discontinue medications for hypertension, diabetes, and kidney stones. At the ALJ hearing in 2018, she reported having lost some 100 pounds and regained 8. (R. 16, 102, 867–68)

Rheumatology exams in 2016 confirmed fibromyalgia and right side sciatica, as well as a history of anemia that had required transfusions. One doctor observed, however, that there was no difficulty with such functions as walking, sitting, or standing. By October 2016 doctors found hypertrophic bony changes to the knees and CMC joints, with a variety of symptoms, including painful motion in the arms, back, shoulder and forearm; swollen hands and fingers; tenderness of the lumbar spine with restricted movement. One doctor diagnosed a cervical and lumbar sprain, along with arthritis and ankyloses. (R. 16–17)

Records from November 2016 showed treatment for anxiety and depression, reportedly of long standing. There was a diagnosis of a moderate episode of recurrent major depressive disorder and panic disorder. (R. 17) By October 2017, Rodriguez reported an increase in symptoms of anxiety and

depression, for entirely understandable reasons.³ As of October 2018, she continued to be treated with medications for depression and anxiety, insomnia, and mood stabilization. She presented, however, as stable, without impairment of major thought processes. (R. 18)

In connection with a workers compensation claim, Dr. I. Ahmad offered opinion evidence that, as of November 2016, the claimant was totally disabled as a physiological unit. Dr. Hermele, based on a November 2016 examination, assessed job-related conditions. He offered the opinion that the claimant had occupational asthmatic bronchitis and estimated permanent pulmonary disability of 50%; high blood pressure, resulting in a permanent disability of 25%; and diabetes with a permanent disability of 25% of total. The ALJ discounted these opinions because they lacked a function-by-function assessment of physical limitations, and were offered under workers compensation, not SSA, standards. (R. 18)

As for mental functioning, the ALJ gave significant weight to the evidence noted above in connection with step two. While noting the limitations of GAF scores, she nevertheless gave them some weight. (R. 18–19)

The ALJ found that Rodriguez was unable to perform past relevant work. She did, however, have a strong history of employment. At the time of the alleged onset date in 2015, the claimant was 46 years old, and hence a "younger individual" (age 18–49).⁴ Transferability of job skills was not considered; the ALJ noted a high school education and ability to communicate in English. (R. 19–20)

With the assistance of the testimony of the VE, the ALJ concluded that there was work in the national economy that the claimant, given her age, education, work experience, and RFC, could perform. She cited the positions of

---

3     Her (ex) son-in-law, convicted in connection with the death of her 4-year-old grandson, had just been released from prison. She reported panic attacks and inability to concentrate. (R. 98–101)

4     As of the date of the decision, however, Ms. Rodriguez was over 50. Her date of birth is May 14, 1968.

inspector/hand packager, photocopy machine operator, and sealing and canceling machine operator. (R. 20)

### c. Analysis

Several issues should be addressed on remand.

### 1. Obesity

Rodriguez submits that the ALJ failed to consider the evidence of her obesity, and hence failed to produce judicially reviewable findings at steps 2 and 3.

At step 2, the ALJ did not find that obesity was a severe impairment at all. The medical evidence of obesity was referred to in passing later, in the summary of evidence pertaining to step 3 and the RFC. That evidence would necessitate a finding of severe obesity for some portion of the claimed period of disability, and obesity for the rest.

As of 2016, the evidence demonstrates severe obesity: a BMI of 52 (4'11", 256 pounds). (R. 16) *See also* Centers for Disease Control ("CDC"), Overweight & Obesity, https://www.cdc.gov/obesity/adult/defining.html (BMI in excess of 40 is "severe," the highest category).[5] During the claimed period of disability, Rodriguez underwent bariatric surgery, and reported an eventual net loss of about 92 pounds. At the hearing, she reported a current weight of 174 to 176 lbs. That result, though admirable, would yield a BMI of 35, still well into the obese category. *See* CDC, Adult BMI Calculator, cited at n.5, *supra*.

Obesity did not enter into the step two analysis at all. It should have, as the Agency virtually concedes. (SSA Br. 14) *See generally* Titles II & XVI: Evaluation of Obesity, SSR 02-1P (S.S.A. Sept. 12, 2002). While obesity is not a standalone disability, it is an aggravator of other conditions, so the Agency is

---

[5] The Agency cites an August 2016 consultative examination by Dr. Rambhai C. Patel, which inexplicably states that Rodriguez presented as "slightly obese" at 60 inches tall and 255 lbs. (SSA Brf. 6). Those figures yield a BMI of 49.8, at about double the normal weight range of 95 to 128 pounds. CDC, Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html. Assuming a height of 4'11", the CDC calculator yields a BMI of 51.5, which is in line with the figure of 52 cited elsewhere in the evidence. *Id.*

called upon to assess its effect upon "the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* Here, the ALJ identified at step 2 some nine serious impairments: fibromyalgia, right sciatica, hypertension, arthritis, anemia sleep apnea, headaches, anxiety, depression, and posttraumatic stress disorder (PTSD). (R. 14) Obesity might or might not aggravate some or all of these, but I lack a step 2 ruling as to whether it did so.

At step 2, and indeed at step 3 and the RFC analysis, the Agency continues to state that substantial evidence supported the ALJ's not finding that obesity amounted to a disabling impairment. But the ALJ made no finding at all as to obesity. Obesity is simply mentioned in passing by way of a mention in the report of a doctor who was diagnosing sleep apnea. The Agency casts blame on Rodriguez herself: never, says the Agency, "did Plaintiff identify obesity as a disabling impairment." (SSA Br. 15) But the Plaintiff is not required to be her own physician. Severe obesity was plainly apparent on the face of the medical records, including those cited and quoted in the ALJ's decision. In such a case, the ALJ must develop the record, or at least discuss it.

The Agency responds, however, that any error was harmless, primarily because the ALJ adequately considered resulting limitations in connection with step 3 and the RFC. I might agree under many circumstances: for example, a clearer case with fewer established impairments, or one in which the ALJ omitted a finding of obesity at step 2 but adequately discussed it in connection with step 3 or the RFC. Again, however, the ALJ did not analyze the plaintiff's BMI of 52 or its effect on her other impairments or activities. I lack a significant basis for review.

### 2. Time frame/Other impairments

The decision states that certain listings have been consulted: 1.02 dysfunction of the joints, 7.05 hemolytic anemias, 12.04 depressive, bipolar and related disorders, 12.06 anxiety and obsessive-compulsive disorders and

8

12.15 trauma and stressor-related disorders. (R. 14) Left unexplored in the "equivalence" analysis are hypertension, sleep apnea, sciatica, fibromyalgia.

Such omissions are explainable, in part, by the nature of the ALJ's analysis, which rested heavily on improvements in Ms. Rodriguez's condition. Primarily, the ALJ noted that in late 2017, a year after bariatric surgery, the conditions of hypertension, diabetes, and kidney stones had alleviated considerably. The ALJ did not, however, discuss or consider whether Rodriguez was disabled from the onset date in May 2015 until 2017. Nor did the discussion assess the effect of the gradual decrease in the claimant's weight from late 2016 through late 2018. On remand, this should be considered. In addition, the ongoing effect of the severe obesity, which had become mere obesity, should be assessed.

In short, the ALJ must, on remand, "combine and compare" the impairments at step 3 to determine whether they add up to some period of disability within the relevant period.

### 3. Time frame/Age category

The ALJ categorized Ms. Rodriguez as a "younger individual" based on her age *as of the disability onset date*:

> **7. The claimant was born on May 14, 1968, and was 46-years-old, which is defined under the Regulations as a "younger individual" (within age range 18–49), on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

(R. 14)

The ALJ's ultimate finding, however, was that there was no disability from the alleged onset date, May 5, 2015, through the date of her decision, January 11, 2019.[6] (R. 21) During that period—as of May 14, 2018—Ms. Rodriguez turned 50 and graduated to the next age category.

---

[6] The date last insured is less significant here than in some cases, because it was December 31, 2020, which is after the date of the ALJ's adjudication. *See generally Kappler v. Com'r of Soc. Sec.*, No. 08-5251, 2010 WL 503033, at *6 (D.N.J. Feb. 8, 2010) ("To be eligible for DIB, Plaintiff must prove that the onset of disability occurred while Plaintiff was insured under 42 U.S.C. § 423(c).").

The Social Security Administration will apply the age category that applies to the claimant during the period for which the Administration must determine if the claimant is disabled. 20 C.F.R. § 416.963(b) (for SSI, "[w]e will use each of the age categories that applies to you during the period for which we must determine if you are disabled."); 20 C.F.R. § 404.1563(b) (same for DIB).[7] If a person is "closely approaching an advanced age" (age 50-54), then the standard shifts somewhat, and the Administration "will consider that [the claimant's] age along with a severe impairment(s) and limited work experience may seriously affect [the claimant's] ability to adjust to other work." 20 C.F.R. § 416.963(d) (SSI); § 404.1563(d) (DIB).

I do not prejudge the issue. Depending on the ALJ's resolution of other issues on remand, it may or may not turn out to be significant to the result. It should, however, be considered.

### 4. RFC

Once the above analysis is done, the RFC may have to be reformulated. I do not comment further except to state that a connection should be drawn between evidence of record and the specific findings of capacity to, *e.g.*, walk, climb ladders, crouch, stand for six hours, *etc.*

---

[7] With a bit of wiggle room. If the claimant is "within a few days to a few months of reaching an older age category, *and using the older age category would result in a determination or decision that [the claimant] is disabled*," then the Administration "will consider whether to use the older age category after evaluating the overall impact of all the factors." 20 C.F.R. § 416.963; 20 C.F.R. § 404.1563(b) (emphasis added). Thus, a borderline age situation exists if two factors are present: (1) the claimant is within a few days or a few months of reaching an older age category and (2) application of the older age category would result in the determination that the claimant is disabled.

Where, however, the claimant has chronologically aged into the next category before the date of adjudication, that category will apply without the need for application of the "borderline" rule. *Berg v. Berryhill*, No.17-04452, 2019 WL 3387209, at *5 (E.D. Pa. July 26, 2019). That is the situation here; Ms. Rodriguez turned 50 some eight months before the date of adjudication.

## III. Conclusion

I do not intend to usurp the role of the Agency. My decision rests primarily on the inadequacy of the findings to permit review. I express no view as to whether, on remand, the Agency should reach a conclusion of disability.

For the reasons set forth above, the Commissioner's decision is **REVERSED** and the matter is remanded for further proceedings not inconsistent with this opinion. An appropriate order follows.

Dated: April 29, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**